IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IMPERIAL FIRE & CASUALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>vs.<br><br>MARK WARMAN, and WILKERSON, WASSALL & WARMAN, P.C.,<br><br>                    Defendants. | Case No.13-CV-813-CVE-FHM |

## OPINION AND ORDER

Defendants' Motion to Compel Plaintiff Imperial Fire to Produce Documents Imperial Claims are Cloaked by Privilege, [Dkt. 19], is before the undersigned United States Magistrate Judge for decision. The matter has been fully briefed, [Dkt. 19, 20, 22], and a hearing was held on July 16, 2014.

## Background

Plaintiff Imperial Fire & Casualty Insurance Company (Imperial) asserts breach of contract and negligence claims against Defendant attorney Mark Warman and his law firm Wilkerson, Wassall & Warman, P.C. (Warman) for legal malpractice arising out of state court proceedings in Caddo County, Oklahoma in the following circumstances.

Imperial's insured, Benson, was at fault in an automobile accident in which four people were killed and two others were seriously injured. Before any legal action was filed, Imperial hired attorney Warman who filed an interpleader action on Imperial's behalf. The policy limits, $50,000, were paid into court and Imperial was dismissed from the interpleader action. Subsequently, a personal injury action was filed against Benson. What Warman was engaged to do with regard to that action is a matter of dispute. However, no

answer was filed on Benson's behalf. Although default was not entered against Benson, an agreed judgment was entered against Benson in the amount of $13.8 million. Benson also entered into an agreement with the judgment creditors whereby they would not execute against Benson, Benson would sue Imperial for breach of its duties of good faith and fair dealing (the bad faith action), and any money paid by Imperial would be distributed first in payment of Benson's attorney then the net balance would be split 50/50 between Benson and the plaintiffs in the personal injury action.

Benson commenced a third party action against Imperial. Imperial engaged counsel other than Warman to defend that action. Those same attorneys represent Imperial in this case. Imperial settled the bad faith action for an undisclosed amount. In the present case, Imperial alleges Warman's professional negligence was the cause of its damages and seeks to recover from Warman "the amount Imperial had to pay to settle the Bad Faith Claim," [Dkt. 2, p. 5], and the attorney fees Imperial incurred defending that case.

## **The Instant Motion**

Warman seeks an order compelling Imperial to produce all documents which contain or refer to communications about the bad faith lawsuit from the date the suit was filed through the date the claims were released against Imperial, including communications of any kind among Imperial's employees or representatives and Imperial and its various lawyers, claims handlers, insurers, reinsurers, or bad faith E&O insurers. [Dkt. 19-1, p. 8].

Imperial states that it "alleges that Defendants committed legal malpractice during the time period in which they were engaged as counsel for [Imperial] and/or Benson." [Dkt. 20, p. 5]. Imperial states it does not assert that Warman committed malpractice after withdrawal as counsel of record. As a result, all of the events that establish whether

2

Warman committed legal malpractice occurred prior to the engagement of current counsel. Imperial argues, therefore, that communications between Imperial and its current counsel about the bad faith action are not relevant to the claims and defenses in this case. Imperial states it has provided Warman all requested documents that pertain to the time period Warman was engaged as counsel. Imperial has withheld, as privileged, communications with its current counsel which occurred after the bad faith lawsuit was filed.

## **Analysis**

Reduced to their essence, these are the parties' positions which frame the discussion of the issues presented in the instant motion. Imperial alleges legal malpractice in Warman's handling of the automobile accident. Imperial ultimately settled a bad faith claim with its insured. Imperial claims the bad faith case was predicated on Warman's actions and claims Warman should have to pay to Imperial the amount paid to settle the bad faith suit and the attorney fees Imperial incurred in defending that case. Warman responds that he did not commit malpractice and that Imperial settled the case, at least in part, because of its own errors and because of errors committed in defending the bad faith suit. Further, Warman questions the reasonableness of the decision to settle and the reasonableness of the amount of the settlement.

To prove legal malpractice under Oklahoma law, Imperial must prove: 1) the existence of the attorney/client relationship; 2) breach of the lawyer's duty to the client; 3) facts constituting the alleged negligence; 4) a causal connection between the lawyer's negligence and the resulting injury or damages; and 5) but for lawyer's conduct, the client would have succeeded in the underlying action. *Worsham v. Nix*, 145 P.3d 1055, 1065

3

(Okla. 2006). The determination of the relevance of the information sought and the necessity of the requested discovery is made with these elements in mind.

The party seeking to assert a privilege has the burden of establishing its applicability. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995), *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir.1985). The request for production of documents seeks emails, electronic data, telephone or other recordings made by Imperial, including drafts of documents, internal communications among Imperial's employees, and Imperial and its various claims handlers, insurers and reinsurers about the bad faith lawsuit from the date the lawsuit was filed until the date of settlement. Imperial has not established the applicability of the attorney client privilege to any of these documents and communications. The court finds that these documents are relevant for discovery purposes. Therefore to the extent this material has not been produced, Imperial is hereby ordered to produce responsive information.

At the hearing the parties agreed that in analyzing whether a waiver of the attorney client privilege has occurred, it is appropriate to apply the three factor test set out in *Hearn v. B.J. Rhay*, 68 67 F.R.D. 574, 580 (E.D. Wash 1975).[1] *See also, Frontier Refining v.*

---

[1] In diversity cases such as this, applicability of the attorney client privilege is based on state law, here Oklahoma. The extent of the attorney client privilege is codified at 12 Okla. Stat. §2502. The statute provides that there is no privilege "[a]s to a communication relevant to an issue of breach of duty by the attorney to the client or by the client to the attorney." 12 Okla. Stat. §2502(D)(3). The parties did not address whether §2505(D)(3) applies to take the subject communications outside of the attorney client privilege. It does not appear that the Oklahoma Supreme Court has addressed how far the phrase "an issue of breach of duty" extends. An argument can be made, however, that based on §2502, there is no privilege for the communications Warman seeks. *See Self & Assoc. v. Jackson*, 269 P.2d 30, (Okla. Civ. App. 2011)(finding trial court erred in excluding key evidence on the basis of the attorney client privilege in tortious interference with contract case; ruling that under §2502(D)(3), the attorneys were not bound by the attorney client privilege to the extent necessary to establish and defend against the claim).

Section 2502(D)(3) is based on the concept of relevancy without any need to consider whether the information is "vital" as required by the *Hearn* test and the Tenth Circuit's application of that test in *Frontier Refining v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998).

*Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998)(applying the *Hearn* test in predicting how Wyoming would view waiver). To establish an implied waiver of the attorney client privilege under the *Hearn* test requires the presence of three factors: 1) the assertion of the privilege is the result of some affirmative action taking by the asserting party; 2) through the affirmative act, the asserting party put the privileged information at issue; and 3) applying the privilege would deny the opposing party evidence that is vital to its defense. *Hearn*, 68 F.R.D. at 581. When these three factors exist, a court should find that the party asserting a privilege has impliedly waived the privilege through its own affirmative conduct. *Id*.

In *Scifres v. Ford Motor Company*, 2007 WL 201043, *3 (W.D. Okla.), the court applied the *Hearn* test and denied a motion to quash a subpoena duces tecum which sought production of the plaintiff's divorce attorney's files. The court found the attorney files were relevant to plaintiff's loss of consortium claim and found that application of the privilege would deny the defendant access to vital information needed to defend against that claim. This court has also previously ordered production of attorney files and billing information where plaintiff sued for legal malpractice and sought to recover damages based, in part, on a judgment rendered after the defendant attorney's representation of the plaintiff had ended. *Trinity Mortgage Companies, Inc. v. Dryer*, 2010 WL 2474055 (N.D. Okla.)(June 8, 2010). In *Waite, Schneider, et al. v. Davis*, 2013 WL 4757486 (S.D. Ohio) counsel filed suit to collect a fee. The former client counterclaimed for legal malpractice. Applying Ohio law, and a self-protection exception to the attorney client privilege, the court permitted discovery of the successor law firm's documents without which the attorney could not defend himself against the malpractice claim. *Pappas v Holloway*, 787 P.2d 30, 37 (Wash. 1990)(en banc) is a case where representation of the client was taken over by other

lawyers. Attorney Pappas sued the client for collection of attorney fees and the client counterclaimed for malpractice. Pappas brought third party complaints against the other attorneys involved. The Washington Supreme Court found that applying attorney client privilege to the communications relating to the subject litigation would effectively deny Pappas an adequate defense to the malpractice claim. The Court found that discovery of communications between the subsequent attorneys and the client was necessary because Pappas was not the attorney who tried the case, nor did he have any part in its eventual settlement.

The undersigned finds the first factor is established. Imperial's assertion of the attorney client privilege is the result of Imperial's affirmative act of filing suit against Warman.

The second factor is also established with respect to most of the information Warman seeks. In attempting to attribute the entire amount Imperial paid in settlement of the bad faith case to Warman's alleged negligence, Imperial has directly placed in issue: Imperial's actions; the actions of its attorneys in defense of the bad faith suit; the reasonableness of the decision to settle the bad faith case, including Imperial's assessment of the risk of trial and the rationale for settling; and the reasonableness of the settlement amount.

The third factor requires that the attorney client communications must also be vital to the party seeking discovery of those communications. That is, the attorney client communications must be necessary to the proof or defense of an issue, and the information must not be available from another source. *See Frontier*, 136 F.3d at 701. Discovery of attorney client communications are not to be compelled as a means to enable a party to

more easily prove matters at issue. *Cardtoons, Inc., v. Major League Baseball Players Assn.*, 199 F.R.D. 677, 681-82 (N.D. Okla. 2001). The third factor thus recognizes the importance of the attorney client privilege and assures that a finding that the attorney client privilege has been waived is not made lightly.

The damages Imperial seeks to recover were not established by a jury. If the case had been tried, it may have been possible for Imperial to sue Warman for malpractice and maintain the privilege as to communications made in course of defending the bad faith action. However, Imperial decided to settle the case and Imperial decided the amount of the settlement. The court finds that complete information about Imperial's decision to settle the case and the decision to settle for the particular amount paid is not available from Imperial's employees and decision makers without obtaining attorney client communications.

The attorney client communications clearly factored into the decision to settle. Regardless of when in the process information was communicated to Imperial, information from Imperial's lawyers about the bad faith case became part of its knowledge base and was weighed when Imperial decided to settle the case. To be able to defend against Imperial's claim, Warman must be able to effectively assess the reasonableness of Imperial's decision to settle the bad faith case and the reasonableness of the settlement amount. To that end, Warman is entitled to discover all of the information at Imperial's disposal when it decided to settle. That information includes all of the information about the case communicated to Imperial by its counsel.

The particular circumstances of the bad faith case establish that the attorney client communications are vital to Warman's defense. Imperial aggressively defended the bad faith suit. Imperial contended Warman's actions were appropriate and that Benson suffered no damages as a result of the alleged bad faith. In settling with Benson, Imperial abandoned those positions. After contending that Warman did nothing wrong, Imperial sued Warman. To succeed on its claim of malpractice against Warman, Imperial must prove a causal connection between Warman's alleged negligence and the damages it claims (the amount of the settlement). Imperial must also prove that but for Warman's conduct, Imperial would have succeeded in the bad faith action. Thus, Imperial's malpractice claim seems to exclude a mere business reason for settling, Imperial's malpractice claim is actually an assertion that Benson's claim was meritorious. Further, in seeking to recover from Warman the amount it paid in settlement, Imperial is necessarily asserting that the substantial settlement with Benson was wholly attributable to Warman's alleged negligence and that the settlement amount was a reasonable estimation of Benson's financial losses, embarrassment, loss of reputation, and mental pain and suffering.[2] When Imperial's aggressive defense of the bad faith case and the abrupt turn-around of position that settlement entailed is considered with the proof necessary for Imperial to prevail in this legal malpractice action, it is apparent that access to the attorney client communications pertaining to the bad faith case is vital to Warman's defense.

Based on the foregoing analysis, the court finds that Imperial has broadly waived the attorney client privilege for communications with counsel about the bad faith case. The

---

[2] *See* Oklahoma Uniform Jury Instructions–Civil, Instruction No. 22.4 Bad Faith–Damages.

discoverable attorney client communications include all communications, correspondence, and documents exchanged between Imperial and its attorneys concerning the bad faith case from the date the bad faith suit was initiated through the date of the settlement.

However, since the court's decision is based on Warman's need to discover the information at Imperial's disposal in deciding to settle and arriving at the amount of the settlement, the waiver does not include any material in counsel's files that was not communicated to Imperial. Thus, work production protection remains intact for information that was not communicated to Imperial.

Imperial argues that the case *Frontier Refining v. Gorman-Rupp Co., Inc.,* 136 F.3d 695 (10th Cir. 1998) is similar to this case and, therefore this court should find that the privileged information not "vital" to Warman's defense. The court finds that *Frontier* is distinguishable from this case.

Frontier, a refinery operator, paid to settle personal injury claims made after an explosion and fire occurred at the refinery. Frontier sued the manufacturer of centrifugal pumps to recover the amounts paid in settlement, alleging the explosion and fire were caused by the pumps. The trial court ordered production of the files of Frontier's counsel for the underlying claims, finding that Frontier had waived the attorney client privilege by filing a suit for equitable indemnity. *Id.* at 698. The Tenth Circuit, considering Wyoming law, applied the *Hearn* test. The Court found that the trial court erred in ruling that the information was relevant to challenging the reasonableness of the settlement and ordering production of the attorney files without conducting an analysis about whether the information was vital. The Tenth Circuit stated that mere relevance is not enough, the information must be "vital." *Id.* at 701. The Tenth Circuit found that information about the

9

reasonableness and motivation for settling was available through other witnesses. *Id.* at 702.

Here, the court has found that the attorney client communications are vital. Further, in *Frontier*, the trial court ordered production of counsel's entire file on the underlying claim. In the present case, the court has not ordered production of Imperial's counsel's entire file. Rather, the production ordered in this case is tailored to providing Warman all of the information at Imperial's disposal when it made the decision to settle the case and when it arrived at the amount of settlement.

## **Conclusion**

Defendants' Motion to Compel Plaintiff Imperial Fire to Produce Documents Imperial Claims are Cloaked by Privilege, [Dkt. 19], is GRANTED in PART and DENIED in PART as set out herein. Imperial is HEREBY ORDERED to produce responsive documents in accordance with this Order.

SO ORDERED this 22nd day of July, 2014.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE